**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>BRANDON HULLABY,<br>*Defendant-Appellant*. | No. 11-10118<br><br>D.C. No.<br>2:09-cr-01406-<br>SRB-3 |
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>BRANDON HULLABY,<br>*Defendant-Appellant*. | No. 11-10170<br><br>D.C. No.<br>2:09-cr-01406-<br>SRB-3<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted March 11, 2013
Withdrawn From Submission
Resubmitted November 1, 2013
San Francisco, California

Filed December 4, 2013

Before: J. Clifford Wallace, M. Margaret McKeown, and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY*

### Criminal Law

Affirming a conviction, the panel rejected the defendant's contention that the government engaged in outrageous conduct during the investigation that led to the defendant's arrest.

The panel explained that neither the fact that a government informant had previously committed crimes, nor that the informant was trying to reduce his future criminal liability, satisfies the defendant's burden of showing that the government's use of the informant was so outrageous as to violate the universal sense of justice.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Jon M. Sands, Federal Public Defender, District of Arizona; Daniel L. Kaplan (argued), Assistant Federal Public Defender, Phoenix, Arizona, for Defendant-Appellant.

John S. Leonardo, United States Attorney, District of Arizona; Mark S. Kokanovich, Deputy Appellate Chief; Dominic Lanza (argued), Assistant United States Attorney, Phoenix, Arizona, for Plaintiff-Appellee.

**OPINION**

WALLACE, Circuit Judge:

Brandon Hullaby appeals from his judgment of conviction for conspiracy to possess with intent to distribute more than five kilograms of cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) and possession of a firearm in furtherance of the conspiracy under 18 U.S.C. § 924(c)(1)(A)(i). Hullaby objects to various trial rulings by the district court. Here, we consider only his contention that the government engaged in outrageous conduct during the investigation that led to Hullaby's arrest. In a separately filed unpublished disposition, we consider his remaining arguments.

Hullaby filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Hullaby's outrageous conduct claim hinges on the character of a government informant named Pablo Cortina.

Accordingly, we begin by considering Cortina's criminal history, insofar as it forms the basis of Hullaby's claim.

Several years before the government investigation that led to Hullaby's arrest, Cortina belonged to a group of criminals who perpetrated a series of home invasions. The group dressed in law enforcement uniforms when raiding homes, and used a stolen law enforcement battering ram to break down locked front doors. Carrying AK-47s, shotguns, and other weapons, they would subdue and bind any occupants present, and then abscond with their possessions. Cortina was named in a 115-count indictment, and he knew that he faced the possibility of spending the rest of his life in prison. In hope of reducing his sentence, Cortina informed on his associates. Due to his cooperation, he was allowed to plead guilty to only one felony, and was sentenced to four years of probation and released from jail.

Less than a month after his release, Cortina began to steal merchandise from his employer. A supervisor discovered Cortina's theft and called the police, at which point Cortina fled. Fearful that his probation violation would send him to prison for an extended period, and that he could face his old associates there, he contacted the detective with whom he had worked previously and offered to disclose more information about new home invasions in the area.

After meeting with him, and over the objection of Cortina's probation officer, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) registered Cortina as a confidential informant. The ATF then used Cortina in the "reverse sting" operation in Phoenix, Arizona that caught Hullaby. In this operation, undercover ATF agents, working with Cortina, met with Hullaby and others to plan and carry

out a robbery of a fictional cocaine stash house. Hullaby's part in the plan was to enter the stash house, along with three others, and subdue the guards that the ATF agents said would be present.

On the appointed day, the ATF agents, Cortina, and the other conspirators met in a parking lot from which they were supposed to proceed to the stash house. As the participants prepared to leave, one of the agents gave a signal and ATF personnel arrested the conspirators.

## II.

We review de novo the district court's conclusion that the government did not violate Hullaby's due process rights through outrageous conduct. *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991). "For a due process dismissal, the [g]overnment's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." *Id.* This is "an extremely high standard." *Id.* Indeed, as we have recently observed, there are "only two reported decisions in which federal appellate courts have reversed convictions under this doctrine." *United States v. Black*, — F.3d —, 2013 WL 5734381, at *5 (9th Cir. Oct. 23, 2013) (citing *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978) and *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971)).

Here, Hullaby contends that the government's conduct was outrageous, insofar as the government collaborated with "a repeat violent home-invader [Cortina] whose motivation in spurring the government to create this fictional offense was to continue to avoid accountability for his own heinous crimes." In *United States v. Simpson*, 813 F.2d 1462 (9th Cir. 1987), we considered a similar argument. In that case, a

confidential informant, while working to help the police, was also engaging in prostitution and using heroin. *Id.* at 1469–70. The confidential informant had also been arrested on "numerous" previous occasions. *Id.* at 1469. The district court had dismissed the indictment, in part because the government knew about these activities and arrests and nonetheless continued to use the informant. *Id.* at 1464.

We held that this state of affairs did not "raise[] due process concerns," because "[i]t is unrealistic to expect law enforcement officers to ferret out criminals without the help of unsavory characters." *Id.* at 1470. Thus, we concluded that the mere fact that a confidential informant "continued to use heroin and engage in prostitution during [an] investigation" did not "oblige the [government] to stop using her as an informant." *Id.*

Likewise, here, the fact that Cortina had engaged in past crimes does not raise due process concerns about the government's use of him as a confidential informant in its investigation. Nor does the nature of Cortina's past crimes render the government's conduct "outrageous." Indeed, it was precisely because of his past experience as a criminal that he was useful to the ATF in its efforts to minimize the risks inherent in apprehending groups who were engaging in home invasions. We do not require the government to enlist a person with no criminal experience to help with the apprehension of a group of hardened criminals.

Similarly, it is not shocking that Cortina was cooperating out of self-interest. *Id.* at 1469 (observing that it is "common practice for the government to reduce or drop charges against persons who cooperate with law enforcement officials in the prosecution of others"). We do not require the government

to recruit solely informants who will work in a spirit of altruism for the good of mankind.

It may be surprising that Cortina was given only four years of probation by the state court after being charged with very serious crimes. However, we are not reviewing his state court sentence for "outrageousness" here. Rather, we consider whether the government's use of Cortina in Hullaby's case was so outrageous as to "violate the universal sense of justice." *Smith*, 924 F.2d at 897. Neither the fact that Cortina had previously committed crimes, nor that he was trying to reduce his future criminal liability, satisfies that heavy burden.

In sum, we reiterate our conclusion in *Simpson* that

> the due process clause does not give the federal judiciary a chancellor's foot veto over law enforcement practices of which it [does] not approve. Rather, our Constitution leaves it to the political branches of government to decide whether to regulate law enforcement conduct which may offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically, but which is not antithetical to fundamental notions of due process.

813 F.2d at 1468 (internal citations and quotation marks omitted).

**AFFIRMED.**